UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LYN LEWIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:05CV00015 RWS |
| ) | |
| GLEN BABICH, PHYLLIS STANLEY, ) | |
| ELIZABETH CONLEY, DEBBIE ) | |
| HARDIN, DEBRA JAYNES and ) | |
| CHUCK DWYER, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This matter is before me on Defendant Chuck Dwyer's motion for summary judgment [#55]. Defendant Dwyer argues that I should grant his motion for summary judgment because (1) the Eleventh Amendment bars Plaintiff Lyn Lewis from suing Dwyer in his official capacity; (2) Lewis failed to allege facts establishing that Dwyer was deliberately indifferent to his serious medical needs; (3) respondeat superior cannot form the basis for liability in a 42 U.S.C. § 1983 case; and (4) Dwyer is entitled to qualified immunity. I will grant his motion for summary judgment.

*Background*

Plaintiff Lyn Lewis has been an inmate at the Southeast Correctional Center (S.E.C.C.) in Charleston, Missouri since April 17, 2003. Prior to arriving at S.E.C.C., Lewis was incarcerated for approximately 12 years at Potosi Correctional Center (Potosi). Lewis is a diabetic requiring constant medical care. Defendants Babich, Stanley, Conley, Hardin and Jaynes are employees of

1

Correctional Medical Systems, Inc. (CMS) a private contractor in charge of providing medical care at S.E.C.C.. Defendant Dwyer is the former Superintendent of S.E.C.C..

On April 17, 2003, Lewis was transferred from Potosi to S.E.C.C.. Upon arrival at S.E.C.C. Lewis was unconscious, apparently due to low blood sugar as a result of his diabetic condition. The parties agree that Lewis' loss of consciousness was directly related to his failure to eat the sack lunch provided at Potosi. However, Lewis argues that he did not eat the sack lunch because it was taken from him during transport by an unnamed guard who is not named as a defendant in this lawsuit. Lewis has not alleged that any of the defendants named in this lawsuit were involved in the incident.

On July 28, 2003, Lewis was admitted to the Transitional Care Unit at S.E.C.C. in an attempt to gain control over his blood sugar levels as an inpatient. Another defendant in this case, Dr. Glen Babich, ordered Lewis' insulin reduced to 4 units of regular insulin and 10 units of NPH insulin in combination with the administration of Metformin, a drug used to lessen the need for insulin. During the following 48 hours Lewis suffered from keto-acidosis as a result of the lowered dosage leading him to lose 20 lbs during his 3 day stay in the Transitional Care Unit. Lewis states that he was not allowed to leave the Transitional Care Unit without signing a "Do Not Revive Order," which he claims he did before leaving the Transitional Care Unit. The medical defendants state that Lewis refused to comply with Dr. Babich's orders and demanded he be released back to his housing unit. The medical defendants state that Lewis signed a refusal of treatment and took responsibility for his own care upon leaving the Transitional Care Unit.

On August 12, 2003, Lewis filed an Informal Resolution Request (IRR). On September 19, 2003, Lewis filed an official grievance. The IRR and official grievance were filed in response to the treatment Lewis received during his July 28-30, 2003 stay in the Transitional

Care Unit. Lewis received a response from the S.E.C.C. grievance office on November 5, 2003 and filed an appeal on November 7, 2003. The appeal was reviewed and Lewis received a response on March 24, 2004. Lewis filed a second appeal on March 30, 2004, which was denied by the Central Office Legal Department of the Missouri Department of Corrections on July 8, 2004.

On September 3, 2003, following a hypoglycemic episode, Lewis told the medical staff that he had only a bowl of cereal for breakfast.

On October 12, 2003, Lewis refused to tell the medical staff treating him for a hypoglycemic episode the amount of insulin he had self administered.

On January 20, 2004, Lewis refused medical treatment, pulling the IV out of his arm and signing a refusal of treatment agreement.

On June 2, 2004, Lewis suffered a hypoglycemic episode after failing to eat dinner and not eating his snack. Three snack bags and two peanut butter and jelly sandwiches were found in his cell uneaten.

On July 3, 2004, Lewis lost consciousness as a result of low blood sugar and received a sternum rub from Defendant Jaynes that resulted in scarring to his chest.

On July 10, 2004, Lewis refused admission to the Transitional Care Unit.

On May 23, 2005, Lewis agreed to follow a rigid program beginning May 30, 2005 to gain control over his blood sugar levels, but failed to follow the prescribed regimen.

On November 3, 2005, Lewis was referred to an endocrinologist who "essentially agreed with" the treatment provided by Dr. Babich.

For approximately two years, Lewis states that he repeatedly suffered from blackouts due to the medical defendants' refusal to provide snack bags with each meal and a double portion of

breakfast. However, Lewis states that he has been receiving snack bags since May 30, 2005 and that the blackouts have "all but stopped."

Lewis filed his initial complaint on January 14, 2005 and an amended complaint on June 29, 2005. On April 17, 2006, Dwyer filed this motion for summary judgment.

*Standard*

Motion for Summary Judgment

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the nonmoving party has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

*Analysis*

**Eleventh Amendment Immunity**

In his amended complaint Lewis sues Dwyer in both his official capacity and in his individual capacity as former Superintendent of S.E.C.C.. Dwyer argues that Lewis is barred from suing him in his official capacity by the Eleventh Amendment. A suit against a state employee in his official capacity is a suit against the State of Missouri. Egerdahl v. Hibbing Community College, 72 F.3d 615, 619 (8th Cir. 1995). The Supreme Court has held that "in the absence of consent, a suit in which the State ... is named as the defendant is proscribed by the Eleventh Amendment. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). The State of Missouri has not consented to this lawsuit therefore the Eleventh Amendment bars Lewis' claim against Dwyer in his official capacity. I will grant summary judgment in favor of Dwyer on Lewis' claims against Dwyer in his official capacity.

**Deliberate Indifference**

In response to Lewis' suit against him in his individual capacity, Dwyer argues that Lewis has failed to put forth facts sufficient to meet the legal threshold for maintaining a suit against Dwyer in his individual capacity. Lewis has claimed that Dwyer was deliberately indifferent to his serious medical needs. First Am. Compl. ¶ 30. Dwyer argues that Lewis has failed to put forth facts sufficient to show the state of mind required to support a claim of deliberate indifference to serious medical needs. In order to sustain a claim for deliberate indifference to serious medical needs the plaintiff must "show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Jolly v. Knudsen, 205 F.3d 1094, 1096 (2000). In determining whether a prison official acted with "deliberate indifference" the Supreme Court has held that courts

should apply a subjective recklessness standard. Farmer v. Brennan, 511 U.S. 825, 838 (1994). The subjective recklessness standard requires "the official ... be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

Lewis has not put forth facts sufficient to show that Dwyer knew of and disregarded his alleged serious medical needs. Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995). Dwyer admits that as part of his job as Superintendent of S.E.C.C. he reviewed grievances filed by prisoners. Dwyer Answer ¶ 6. However, Lewis does not assert any facts indicating that Dwyer consciously disregarded his alleged serious medical needs in reviewing the grievance report. Additionally, Lewis does not assert any facts in his opposition to Dwyer's motion for summary judgment specifically involving Dwyer. All of his factual assertions relate to the medical defendants. Because Lewis has failed to assert any facts indicating that Dwyer possessed the state of mind required to substantiate a "deliberate indifference" claim I will grant summary judgment in favor of Dwyer on Lewis' deliberate indifference claim.

**Respondeat Superior**

Dwyer also argues that he is entitled to summary judgment because *respondeat superior* cannot form the basis for liability in a 42 U.S.C. § 1983 case. The Eighth Circuit has repeatedly held that liability in a section 1983 case cannot be predicated on the theory of *respondeat superior*. Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997); Kulow v. Nix, 28 F.3d 855, 858 (8th Cir. 1994); Smith v. Macantonio, 910 F.2d 500, 502 (8th Cir. 1990). In order for a plaintiff to succeed on a section 1983 claim, he must show that the defendant was personally involved in the constitutional deprivation at issue. Wilson v. Cross, 845 F.2d 163, 165 (8th Cir. 1988). "[A] general responsibility for supervising the operations of a prison is insufficient to establish the

personal involvement required to support liability" in a section 1983 claim. Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Lewis has not asserted that Dwyer, as Superintendent of S.E.C.C., was personally involved in his medical treatment. Without personal involvement in his medical treatment, Lewis cannot claim that Dwyer, in his supervisory role, is liable for the actions of the medical defendants. For this reason, I will grant summary judgment in favor of Dwyer on Lewis' claim of *respondeat superior*.

**Qualified Immunity**

In his fourth argument, Dwyer claims that he is entitled to judgment based on the doctrine of qualified immunity. The doctrine of qualified immunity establishes that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When a defendant claims qualified immunity in a motion for summary judgment, the burden rests on the plaintiff to show a material fact or question of law. Williams v. Kelso, 201 F.3d 1060, 1064 (8th Cir. 2000). In his opposition to Dwyer's motion for summary judgment, Lewis does not raise any facts relating to Dwyer's actions and offers no response to Dwyer's legal arguments. Lewis has failed to meet his burden in responding to Dwyer's claim of qualified immunity, therefore I will grant summary judgment in favor of Dwyer on the basis of qualified immunity.

**Standing**

Finally, Dwyer argues that Lewis' claims for declaratory and injunctive relief should be dismissed because he lacks standing to bring those claims. In order to seek declaratory or injunctive relief a plaintiff must allege an "actual or imminent" injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 564 (1992). The Supreme Court has held that past wrongs do not

7

establish a "real and immediate threat" of injury without credible allegations that the wrong will occur again. City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983). In his opposition brief Lewis has stated that he is now receiving his snack bags and double breakfast and that his blackouts as a result of low blood sugars have "all but stopped." Pl. Opp. Brief, 15, 20. By his own assertions, Lewis has conceded that the threat of on-going injury is unlikely. Lewis has failed to allege the likelihood of imminent injury necessary to establish standing for the declaratory and injunctive relief sought. Therefore I will grant summary judgment in favor of Dwyer on Lewis' claims for declaratory and injunctive relief.

**Failure to Exhaust**

In his initial memorandum in support of his motion for summary judgment Dwyer asserts the argument that Lewis is barred from raising his claims because he failed to exhaust his administrative remedies before filing this lawsuit. This argument was based on Lewis' failure to identify Dwyer as a person connected to the lack of proper medical care. Dwyer reasoned that Lewis' failure to list him during the grievance process was a failure to exhaust the available administrative remedies before filing suit in federal court as required by the Prison Litigation Reform Act. 42 U.S.C. § 1997(a). However, as Dwyer stated in his reply brief, the Supreme Court has recently ruled that failure to name a certain defendant is not a failure to exhaust administrative remedies where the grievance procedures made no mention of naming particular officials. Jones v. Bock, 127 S.Ct. 910, 923, ___ U.S. ___ (2007). Because the S.E.C.C. grievance procedure did not require the naming of specific prison officials Dwyer has withdrawn this argument.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Chuck Dwyer's Motion for Summary Judgment [#55] is **GRANTED**.

Dated this 28th day of March, 2007.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE