UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LYN LEWIS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )    Case No. 1:05CV00015 RWS |
| | ) |
| GLEN BABICH, PHYLLIS STANLEY, | ) |
| ELIZABETH CONLEY, DEBBIE | ) |
| HARDIN, DEBRA JAYNES and | ) |
| CHUCK DWYER, | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before me on Defendants Babich, Stanley, Conley, Hardin and Jaynes' (hereinafter "Defendants") motion for summary judgment [#49]. Defendants argue that I should grant their motion for summary judgment because Plaintiff Lyn Lewis has failed to allege facts sufficient to establish that Defendants were deliberately indifferent to his serious medical needs. Because I find that Defendants' actions do not rise to the level of deliberate indifference, I will grant Defendants' motion. However, because Defendants did not address Lewis' claim that Defendants required him to sign a "Do Not Revive Order" before allowing him to leave the Transitional Care Unit, this claim remains pending unless Defendants seek summary judgment on this remaining issue.

*Background*

Plaintiff Lyn Lewis has been an inmate at the Southeast Correctional Center (S.E.C.C.) in Charleston, Missouri since April 17, 2003. Prior to arriving at S.E.C.C., Lewis was incarcerated for approximately 12 years at Potosi Correctional Center (Potosi). Lewis is a diabetic requiring constant medical care. Defendants Babich, Stanley, Conley, Hardin and Jaynes are employees of

Correctional Medical Systems, Inc. (CMS), a private contractor in charge of providing medical care at S.E.C.C.. Defendant Dwyer is the former Superintendent of S.E.C.C..

On April 17, 2003, Lewis was transferred from Potosi to S.E.C.C.. Upon arrival at S.E.C.C. Lewis was unconscious, apparently due to low blood sugar as a result of his diabetic condition. The parties agree that Lewis' loss of consciousness was directly related to his failure to eat the sack lunch provided at Potosi. However, Lewis argues that he did not eat the sack lunch because it was taken from him during transport by an unnamed guard who is not named as a defendant in this lawsuit. Lewis has not alleged that any of the named defendants were involved in the incident.

On July 28, 2003, Lewis was admitted to the Transitional Care Unit in an attempt to gain control over his blood sugar levels as an inpatient. Dr. Glen Babich, a defendant in this case, ordered Lewis' insulin reduced to 4 units of regular insulin and 10 units of NPH insulin in combination with the administration of Metformin, a drug used to lessen the need for insulin. During the following 48 hours Lewis suffered from keto-acidosis as a result of the lowered dosage leading him to lose 20 lbs during his 3 day stay in the Transitional Care Unit. Lewis states that he was not allowed to leave medical without signing a "Do Not Revive Order," which he claims he signed before leaving the Transitional Care Unit. The medical defendants state that Lewis refused to comply with Dr. Babich's orders and demanded he be released back to his housing unit. The medical defendants state that Lewis signed a refusal of treatment form and took responsibility for his own care upon leaving the Transitional Care Unit.

On August 12, 2003, Lewis filed an Informal Resolution Request (IRR). On September 19, 2003, Lewis filed an official grievance. The IRR and official grievance were filed in response to the treatment Lewis alleges he received during his July 28-30, 2003 stay in the

Transitional Care Unit. Lewis received a response from the S.E.C.C. grievance office on November 5, 2003 and filed an appeal on November 7, 2003. The appeal was reviewed and Lewis received a response on March 24, 2004. Lewis filed a second appeal on March 30, 2004, which was denied by the Central Office Legal Department of the Missouri Department of Corrections on July 8, 2004.

On September 3, 2003, following a hypoglycemic episode, Lewis told the medical staff that he had only a bowl of cereal for breakfast.

On October 12, 2003, Lewis refused to tell the medical staff treating him for a hypoglycemic episode the amount of insulin he had self administered.

On January 20, 2004, Lewis refused medical treatment, pulling the I.V. out of his arm and signing a refusal of treatment agreement.

On June 2, 2004, Lewis suffered a hypoglycemic episode after failing to eat dinner and not eating his snack. Three uneaten snack bags and two uneaten peanut butter and jelly sandwiches were found in his cell.

On July 3, 2004, Lewis lost consciousness as a result of low blood sugar and received a sternum rub from Defendant Jaynes that resulted in scarring to Lewis' chest.

On July 10, 2004, Lewis refused admission to the Transitional Care Unit.

On May 23, 2005, Lewis agreed to follow a rigid program beginning May 30, 2005 to gain control over his blood sugar levels, but failed to follow the prescribed regimen.

On November 3, 2005, Lewis was referred to an endocrinologist who "essentially agreed with the treatment provided by Dr. Babich."

For approximately two years, Lewis states that he repeatedly suffered from blackouts due to the medical defendants' refusal to provide snack bags with each meal and a double portion of

breakfast. However, Lewis states that he has been receiving snack bags since May 30, 2005 and that the blackouts have "all but stopped."

Lewis filed his initial complaint on January 14, 2005 and an amended complaint on June 29, 2005. On March 29, 2006 Defendants Babich, Stanley, Conley, Hardin and Jaynes filed this motion for summary judgment.

*Standard*

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the nonmoving party has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

*Analysis*

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, claiming that the defendants violated his Eighth Amendment constitutional right to be free from cruel and unusual punishment. The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976) (citation omitted). It is a violation of the Eighth Amendment to deny medical care for serious medical needs that would "constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" Id. at 105-06.

To establish an Eighth Amendment violation, the inmate has the burden of proving both a subjective and objective component. First, the prison official must deprive the inmate of a right that is objectively "sufficiently serious" to rise to the level of a constitutional violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The "act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. (internal quotations omitted). Additionally, the prison official may not be held liable for violations of the Eighth Amendment "for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." Id. at 837. Under this standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. A claim of deliberate indifference is only indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. Estelle, 429 U.S. at 102 (citation omitted).

Deliberate indifference may be manifested "by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care

5

or intentionally interfering with the treatment once prescribed." Id. at 104-05 (footnotes omitted). Additionally, "[d]eliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." Vaughan v. Lacey, 49 F.3d 1344, 1346 (8th Cir. 1995). However, mere negligence or medical malpractice is "insufficient to rise to a constitutional violation." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997).

Doctors may exercise their independent medical judgment in determining what treatment to give a prisoner. See Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). According to the Eighth Circuit Court of Appeals, "[t]he existence of a possible alternative course of treatment, which 'may or may not' have been successful, is not sufficient to raise an inference of deliberate indifference where the prison officials acted reasonably but ultimately failed to avert the harm." Dulany, 132 F.3d at 1241. A plaintiff cannot establish deliberate indifference by "showing that another physician might have ordered different tests and treatment." Id. at 1242 (citations omitted). A prisoner's claims do not rise to the level of deliberate indifference merely because the prisoner had a "difference of opinion over matters of expert medical judgment or prescribed course of medical treatment." Randall v. Wyrick, 642 F.2d 304, 308 (8th Cir. 1981).

**Course of Treatment**

Defendants argue that Lewis has failed to assert facts showing that they acted with deliberate indifference to his serious medical needs. It is not disputed that Lewis suffers from diabetes or that this disease creates serious medical needs. Defendants admit that they are aware that Lewis is a diabetic and have been aware since his transfer to S.E.C.C. Defendants argue that they have not acted with deliberate indifference to Lewis' medical needs and that Lewis' claim is actually a dispute over the course of treatment.

Defendants have asserted a number of facts in support of their argument that they have provided Lewis with adequate medical care for his diabetes and that the harm he has alleged is a result of his refusal to comply with their treatment. The medical records and affidavit of Dr. Babich establish that Lewis has been provided with extensive medical treatment for his diabetes during his incarceration at S.E.C.C., a fact Lewis has not denied. Lewis has also not denied a number of facts listed in the Defendants statement of facts which evidence his refusal to cooperate with medical treatment. For example, Lewis does not deny that he refused to tell medical staff treating him for a hypoglycemic episode on October 12, 2003 the amount of insulin that he had self administered. He does not deny that he pulled his I.V. out on January 20, 2004 and signed a refusal of treatment statement. He also does not deny that he would squirt out his insulin when the nurse was not looking.

Lewis argues in his opposition brief that Defendants' refusal to accommodate his dietary requests and insulin amounts has directly lead to him losing consciousness repeatedly throughout his incarceration. Lewis argues that he would lose consciousness three to five times a month as a direct result of Defendants' refusal to provide him with snack bags after each meal and a double portion of breakfast. However, Defendants' denial of these dietary requests does not represent a refusal to treat Lewis for his diabetes, rather it is a disagreement about the proper treatment for Lewis' diabetes. The Eighth Circuit has held that "[t]he existence of a possible alternative course of treatment, which 'may or may not' have been successful, is not sufficient to raise an inference of deliberate indifference where the prison officials acted reasonably but ultimately failed to avert the harm." Dulany, 132 F.3d at 1241. Although Lewis may prefer his diabetes be treated with a different diet, that does not establish that Defendants' decision to apply a different course of

treatment amounted to deliberate indifference. I will grant summary judgment in favor of Defendants on this issue.

**Use of Sternum Rub**

Lewis also argues that Defendant Jaynes' use of a sternum rub on July 3, 2004 was deliberately indifferent to his serious medical needs. Lewis argues that Jaynes' use of the sternum rub "can't be the norm in treating this condition because of the scarring that accompanied the sternum rub." In support of this argument Lewis included a picture of the scarring on his chest dated three days after application of the sternum rub. Defendants have put forth evidence documenting the use of the sternum rub for the purpose of assessing Lewis' level of consciousness. Lewis has not offered any evidence that the sternum rub was applied for any other reason. Lewis' argument that this treatment "can't be the norm" and the picture of the harm caused are insufficient to establish the state of mind required for a claim of deliberate indifference. Mere negligence or medical malpractice is "insufficient to rise to a constitutional violation." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). I will grant summary judgment in favor of Defendants on this issue.

**Treatment Period of July 28, 2003 to July 31, 2003**

Lewis also argues that Defendants' treatment for the three day period from July 28, 2003 to July 31, 2003 amounted to deliberate indifference to his serious medical needs. Lewis argues that Dr. Babich's changes in Lewis' insulin and medication dosage lead to high blood sugar levels and keto-acidosis. Lewis argues that as a result of the keto-acidosis he lost twenty pounds over a 48 hour period while in the Transitional Care Unit. Defendants counter that Lewis was uncooperative during this period precluding effective management of his blood sugar level. Doctors may exercise their independent medical judgment in determining what treatment to give

8

a prisoner. See Long, 86 F.3d at 765. Therefore, I will grant summary judgment on the issue of whether Defendants' medical treatment of Lewis during this period rose to the level of deliberate indifference.

Lewis also claims that he was forced to sign a "Do Not Revive Order" before he was allowed to leave the Transitional Care Unit. Defendants counter that he willingly signed a refusal of treatment statement before being discharged from the Transitional Care Unit. Because Defendants did not address Lewis' claim that Defendants required him to sign a "Do Not Revive Order" before allowing him to leave the Transitional Care Unit, this claim remains pending unless Defendants seek summary judgment on this remaining issue.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Barbich, Stanley, Conley, Hardin and Jaynes's Motion for Summary Judgment [#49] is **GRANTED**.

Dated this 28th day of March, 2007.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE